IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LOUIS JOHN LIPAYNE, JR.,**  Case No. 1:18 CV 273

    Plaintiff,  Judge Solomon Oliver, Jr.

    v.  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.  REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Louis John Lipayne, Jr. ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated February 2, 2018). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB in May 2015, alleging a disability onset date of October 3, 2014. (Tr. 142-43). His claims were denied initially and upon reconsideration. (Tr. 68, 81). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 89). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 8, 2017. (Tr. 22-54). On April 4, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-18). The Appeals Council denied Plaintiff's request for review, making the hearing decision the

final decision of the Commissioner. (Tr. 1-5); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on February 2, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in June 1954, making him 61 years old on his alleged onset date. *See* Tr. 142.

In a May 2015 contact with the state agency, Plaintiff reported he lived with his parents; he was able to cook microwave meals, pay his own bills, vacuum, and care for his lawn, but his mother did the laundry. (Tr. 167). He had an associate's degree in applied business, "but it took him 4 1/2 years." *Id.*

At the time of the hearing, Plaintiff lived with his father. (Tr. 25). He graduated from college. (Tr. 26). He had past work as a machine operator (medium exertion and semi-skilled, performed at the light exertional level) (Tr. 29), and as an accounting clerk (sedentary, skilled) (Tr. 31). As an accounting clerk, Plaintiff performed mostly data entry and accounting; he also helped with tasks such as mowing the lawn. (Tr. 30).

Relevant Medical Evidence[1]

There are no mental health treatment records in this case. Thus, the medical evidence of record consists of a consultative psychological examination (Tr. 232-41), and two state agency reviewing psychologist opinions (Tr. 64-65, 77-78).

---

1. Plaintiff raises arguments related to the ALJ's treatment of his mental limitations. *See* Doc. 10, at 7-14. As such, the undersigned summarizes only the records related to Plaintiff's mental limitations, and not those associated with his physical impairment of cataracts. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (arguments not raised in opening brief deemed waived).

*Consultative Psychological Examiner*

In July 2015, Plaintiff underwent a psychological examination with Herschel Pickholtz, Ed.D. (Tr. 232-41). Plaintiff reported that he lived with his parents. (Tr. 233). He stated that he graduated from high school with average grades, but was in special education classes from first through ninth grade. (Tr. 234). He obtained an associate's degree in applied business after attending Lakeland Community College for five and one-half years part-time. *Id.* He also received training at work and school for factory work, data entry, retail sales, and operating machinery. *Id.* Plaintiff had a valid driver's license, passing the written test at age 17. *ID.*

Plaintiff told Dr. Pickholtz he was unable to work because he could not "see as well" and could not "type fast." (Tr. 233). He saw a psychologist when he was in school, and was placed in "adjusted classes for slow learners". (Tr. 233). Dr. Pickholtz noted Plaintiff's pace during the evaluation was below average, and his persistence was average. (Tr. 234). He had no indications of anxiety. *Id.* Plaintiff reported he repeatedly checked whether the toilets were flushed, writing checks, and his letters and numbers. *Id.* He did this for an hour per day. *Id.*

Plaintiff reported past work at "Am Tech" for 10 years as a full time accountant, and that he left due to lack of work. (Tr. 235). Prior to that he worked for Sentinel Consumer Products for seven years as an operator extruder. *Id.* He was also laid off from that job due to lack of work. *Id.* "[O]nce in a while", he received complaints about the pace of his work. *Id.*

On examination, Dr. Pickholtz noted Plaintiff was "a little bit slow in responding", but he was compliant and "had very little difficulties in terms of understanding and responding to the questions and directives presented to him". (Tr. 235). His speech was easily understood, logical, coherent, relevant, and goal-directed, but his rate of speech was "somewhat slow". *Id.* His overall cognitive functioning was in "the low average range, at the upper end." (Tr. 235-36). His affect

3

was appropriate, and mood was euthymic. *Id.* Plaintiff reported symptoms consistent with an obsessive/compulsive disorder ("OCD"), such as "checking things all the time", and "spend[ing] an hour a day at least checking numbers and letters." (Tr. 236). This interfered with work in his past. *Id.*

Dr. Pickholtz noted Plaintiff's ability to recall long-term history and recall five objects after twenty minutes were within the low average range. (Tr. 236). He estimated Plaintiff's intelligence fell within the low average range. *Id.* Plaintiff's full-scale IQ was 89, within the low average range of functioning. (Tr. 238). His pace and persistence during testing were average. (Tr. 239). Dr. Pickholtz noted Plaintiff reported symptoms "consistent with an obsessive/compulsive disorder" and observed:

> The impact of his current psychiatric complaints and symptoms relative to work functioning comparable to the type of work he did in the past appears to be somewhat impaired but not preclusive of work and I think would improve with medications and treatment for OCD.

(Tr. 239). Dr. Pickholtz assessed OCD, an unspecified personality disorder related to perfectionistic and avoidant features, and an unspecified neurocognitive disorder, mild, related to meningitis. (Tr. 239-40).

For his functional assessment, Dr. Pickholtz opined Plaintiff's overall capacities to understand, remember, and carry out instructions "for work comparable to the type of work he did in the past appear[ed] to be slightly impaired at worst." (Tr. 240). Regarding attention, concentration, persistence, and pace, Dr. Pickholtz opined Plaintiff's "to perform 1 to 3 step tasks for work comparable to the type of work he did in the past appears to be somewhat impaired at worst primarily as a result of his slowness in terms of visual motor coordination and manual dexterity which may improve with treatment for OCD." *Id.* His abilities to relate to coworkers and supervisors "appear[ed] to be slightly impaired at worst". *Id.* His ability to respond to work

4

pressures comparable to past work were "somewhat impaired at worst and may improve with future treatment for his OCD." *Id.*

    *State Agency Reviewing Psychologists*

In August 2015, state agency reviewing physician Cynthia Kampschaefer, Psy.D., reviewed Plaintiff's records and offered a mental residual functional capacity assessment. (Tr. 64-65). She opined Plaintiff was not significantly limited in the ability to: carry out short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, work in coordination with others without being distracted or distracting, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 64). He was moderately limited in the ability to carry out detailed instructions. *Id.* Dr. Kampschaefer explained Plaintiff could "complete simple and more complex tasks that do not require much speed." (Tr. 65). Dr. Kampschaefer opined Plaintiff was not significantly limited in his ability to: interact appropriately with the general public, ask questions, accept instructions, respond appropriately to criticism, and maintain socially appropriate behavior. *Id.* She noted Plaintiff was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, explaining: "Clmt is slow to respond. Has [history] of checking things all the time and this did interfere with work in the past." *Id.* Finally, she opined Plaintiff was not significantly limited in his ability to be aware of normal hazards and take normal precautions, travel in unfamiliar places, or use public transportation, and the ability to set realistic goals and make plans independently of others. *Id.* She explained: "[Claimant] speaks and moves slowly. His ability to perform 1 to 3 step tasks for work appears somewhat impaired." *Id.* She answered "No" to a question regarding whether there were other more restrictive opinions

about Plaintiff's limitations or restrictions. (Tr. 65-66). In a separate section of the state agency Disability Determination Explanation, there is a "Credibility assessment" stating Plaintiff "reports obsessive and compulsive problems with regards to numbers and letter[s] and spend[s] over an hour daily checking these things, this was reported to the [consultative] examin[er] and statements are credible." (Tr. 62). In a section entitled "weighing of opinion evidence", there is a notation that Dr. Pickholtz's opinion "is given great weight as the report[] appear[s] to accurately reflect the [Plaintiff's] limitations." *Id.*

In October 2015, Tonnie Hoyle, Psy.D., reviewed Plaintiff's records on reconsideration. (Tr. 77-78). She affirmed Dr. Kampschaefer's functional capacity assessment, but added that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* She offered identical explanations to those of Dr. Kampschaefer (Tr. 77-78), and the reconsideration opinion contains the same language regarding a credibility assessment and weighing of medical opinion evidence as did the initial determination. (Tr. 78).

Relevant Non-Medical Evidence

In a May 2015 contact with the state agency, Plaintiff's sister Diane Urda stated she created Plaintiff's job at the family business "for the purpose of helping [him] and helping parents out". *Id.* She reported Plaintiff had to "touch things a lot of time[s]" and "triple checks everything". (Tr. 167). Ms. Urda also reported Plaintiff would not be able to handle the pressure or stress of a job, as he would get nervous, and it took him a long time to learn and perform tasks. *Id.*

In addition to Plaintiff's testimony at the hearing, the ALJ also heard from Plaintiff's brother-in-law Michael Urda. (Tr. 33-46). Mr. Urda was the operations manager at Lim-o-tec Limousine and Auto Repair Service. (Tr. 34). Mr. Urda testified that Plaintiff had lost a prior job

at Sentinel Consumer Products because he did not work fast enough. (Tr. 35-36). At Lim-o-tec, Plaintiff helped with accounting ("he is very accurate with his numbers"), but was "an average of a month and a half to two months behind" what someone else in the accounting business would do. (Tr. 37). Ms. Urda testified Plaintiff worked full time, but someone else could have done the same job part time. (Tr. 41). Plaintiff also helped with other tasks such as cleaning, sweeping, and taking the trash out. (Tr. 37). Mr. Urda testified Plaintiff did everything repetitively, "double checking, triple checking" repair order entries for accuracy. (Tr. 38). Plaintiff also repetitively checked that the bathroom lights were turned off (Tr. 40), or that the trash cans were empty (Tr. 46). Plaintiff stopped working for Lim-o-tec for pay in October 2014 when business worsened, but was still helping six to eight hours per day, "donating his time" from October 2014 through the time of the hearing (February 2017). (Tr. 42-44).

VE Testimony

The ALJ asked the VE to consider an individual of Plaintiff's age, education, work experience, and RFC as ultimately determined by the ALJ. (Tr. 49-51). The VE testified such an individual could not perform Plaintiff's past relevant work due to both the mental limitations and visual limitations. (Tr. 49-50). The VE testified, however, that such an individual could perform other jobs in the national economy such as cleaner, laborer (stores), and production helper. (Tr. 51-52). The VE testified all three jobs were unskilled. (Tr. 52).

In response to a question from counsel, the VE also testified that being off-task for ten percent or more of the workday would eliminate the capacity for competitive work. (Tr. 53).

ALJ Decision

In his April 4, 2017 written decision, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016 and had not engaged in

7

substantial gainful activity from his alleged onset date of October 3, 2011 through his date last insured. (Tr. 13). Plaintiff had severe impairments of cataracts, anxiety disorder, personality disorder, and organic brain disorder, but none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment. *Id.* The ALJ then found Plaintiff retained the residual functional capacity

> to perform a full range of work at all exertional levels but with nonexertional limitations. [He] has limited far and near acuity, and his work should no more than occasionally require depth perception. He must avoid concentrated exposure to hazards. [He] retains the sustained concentration, persistence, and pace necessary for simple work of a routine and repetitive type. He is limited to occasional[,] brief[,] and superficial contact with co-workers.

(Tr. 15). He then found Plaintiff was unable to perform any past relevant work through the date last insured. (Tr. 16). However, considering Plaintiff's age, education, work experience, and RFC, the ALJ stated there were jobs existing in significant numbers in the national economy that the claimant could have performed such as cleaner, laborer-stores, and production helper. (Tr. 17-18). Therefore, the ALJ concluded, Plaintiff was not disabled from his alleged onset date (October 3, 2014) through his date last insured (December 31, 2016). (Tr. 18).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*,

8

474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age,

9

education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises three somewhat related objections to the ALJ's decision. First, he contends the ALJ erred in failing to adopt in the RFC a restriction that Plaintiff would be off-task for more than 10% of the workday. Second, he contends the ALJ failed to properly consider that his past work was in a family supported work environment. Third, and finally, he argues the ALJ failed to properly assess credibility. The gravamen of Plaintiff's overall argument is that he contends the ALJ erred in finding him capable of work because his OCD would have prevented any ability to sustain full-time competitive employment. The Commissioner responds that the ALJ did not err, the decision is supported by substantial evidence, and it should be affirmed. For the reasons discussed below, the undersigned recommends the decision be affirmed.

Off-Task Limitation

Plaintiff first contends the ALJ erred by failing to include a limitation in the RFC that Plaintiff would be off-task for more than ten percent of the workday. Plaintiff is correct that the VE testified such a limitation would be work preclusive. (Tr. 53). However, the undersigned agrees with the Commissioner that the ALJ's decision not to include such a limitation is supported by substantial evidence in the record.

The RFC is the "most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545. An ALJ is only required to include in the RFC those limitations he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th

10

Cir. 1993). Here, no physician of record offered such an off-task limitation, despite recognizing Plaintiff's obsessive compulsive tendencies. *See* Tr. 240 (Dr. Pickholtz recognized OCD, and opined: 1) Plaintiff's ability to maintain attention and concentration for one- to three-step tasks "for work comparable to the type of work he did in the past" was "somewhat impaired at worst"; and 2) Plaintiff's ability to handle work pressures was "somewhat impaired at worst"); Tr. 65, 78 (Drs. Kampschaefer and Hoyle both noted Plaintiff had a history of "checking things all the time", which interfered with his past work, and concluded he was thus "moderately limited" in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"). Despite recognizing some limitations, both state agency reviewing physicians determined Plaintiff was capable of "complet[ing] simple and more complex tasks that do not require much speed. (Tr. 65, 77). The ALJ accounted for such limitations in his RFC, stating that Plaintiff "retains the sustained concentration, persistence, and pace necessary for simple work of a routine and repetitive type" and "is limited to occasional[,] brief[,] and superficial contact with co-workers." (Tr. 15).

In support of his argument, Plaintiff points to a statement contained in both state agency disability determinations. Under the heading "Symptoms and Credibility", a question asks for an "assessment of the credibility of the individual's statements regarding symptoms considering the total medical and non-medical evidence in file?" (Tr. 62, 75). The answer is "partially credible", with a further explanation that Plaintiff "reports obsessive and compulsive problems with regards to numbers and letter[s] and spend[s] over an hour daily checking these things, this was reported to the [consultative] examin[er] and statements are credible." (Tr. 62, 75). Plaintiff argues that "an hour daily" amounts to more than ten percent of an eight-hour workday, and thus because these statements were deemed credible, such a limitations should have been included in the RFC. The Commissioner responds that this remark "is unsigned and appears in a separate portion of the

11

documents from the assessments of the state agency psychological consultants" and it is thus unclear whether these statements were made by medical professionals (Doc. 12, at 10). Regardless, the Commissioner continues, neither state agency psychologist included such a limitation in their RFC assessment.[2] Even assuming these statements were made by the reviewing physicians, both Drs. Kampschaefer and Hoyle opined Plaintiff was "not significantly limited" in the ability to carry out short and simple instructions, maintain attention and concentration for extended periods, or sustain an ordinary routine without special supervision, despite such credible allegations. (Tr. 64, 77). Both physicians found Plaintiff moderately limited in the ability to carry out detailed instructions (Tr. 64, 77), but the ALJ accounted for this in limiting Plaintiff to "simple work of a routine and repetitive type" (Tr. 15). Further, both physicians found Plaintiff "moderately limited" in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 65, 78), but the ALJ also limited Plaintiff to "occasional[,] brief[,] and superficial contact with co-workers" (Tr. 15). Finally, Dr. Hoyle opined Plaintiff was "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, but in the same section (regarding sustained concentration and persistence limitations), she explained that Plaintiff could "complete simple and more complex tasks that do not require much speed". (Tr. 77). Thus, all the physicians of record recognized Plaintiff had some limitations, but also opined Plaintiff could still perform work. The VE's response to a hypothetical question containing the limitations the ALJ

---

2. The undersigned notes that crediting a statement that Plaintiff spends one hour per day checking things and a finding that Plaintiff can work are also not necessarily inconsistent. Plaintiff interprets this as one hour in an eight-hour workday (and thus the more than ten percent off-task limitation). However, Dr. Pickholtz's report states: "He reported he spends about an hour daily checking things and checks his numbers and letters." (Tr. 234). An hour over the course of an entire day is different than an hour over the course of an eight-hour workday, and the statement referenced is not explicitly conditioned on a workday.

12

found supported by the evidence provides substantial evidence that jobs exist that Plaintiff, despite his limitations, can perform. *See* Tr. 50-52; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).

As part of his argument about being off-task, Plaintiff contends the ALJ should have granted more weight to Mr. Urda's testimony regarding how Plaintiff performed his job. *See* Doc. 10, at 15. In his Reply, Plaintiff cites 20 C.F.R. § 404.1545(e), which provides that "[i]n assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence". *See* Doc. 13, at 4 ("The defendant ignored 20 C.F.R. § 404.1545(e) in failing to consider the nonmedical evidence, i.e., the testimony of Diane and Michael Urda[.]").

The undersigned first notes that "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Next, the ALJ here expressly considered the reports from both Michael and Diane Urda:

> At that same time, the claimant's sister was also on the phone. She stated that the claimant was a slow learner all through school. She stated that he takes a long time to learn and do things. The claimant's sister reported that the claimant would have difficulty handling pressure and stress associated with a "regular job". She also stated that she believes the claimant has a compulsive disorder. At the hearing, the claimant's brother-in-law testified that the claimant was let go from jobs in the past because he was too slow. After he was let go, he started working for the "family business." He also testified that the claimant has never lived alone and receives assistance from his father to pay bills.

(Tr. 16).

13

The ALJ's decision as a whole, however, reflects that he found Plaintiff less limited than his family opined, primarily based on the medical opinion of record. *See* Tr. 13, 16 (discussing Dr. Pickholtz's opinion), Tr. 16 (discussing Drs. Kampschaefer and Hoyle). Thus, the undersigned finds no error in the ALJ's consideration of the family testimony, as "'his factual findings as a whole show that he implicitly resolved such conflicts.'" *Kornecky,* 167 F. App'x at 507-08 (quoting *Loral Defense Systems-Akron*, 200 F.3d at 453).[3]

Therefore, the undersigned recommends the court find the ALJ's decision not to include in the RFC a limitation that Plaintiff would be off-task for more than ten percent of the day is supported by substantial evidence.

---

3. Moreover, the Sixth Circuit has explained that the failure to evaluate lay witness testimony can only rarely be reversible error. *See, e.g., Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810-11 (6th Cir. 2012). The *Maloney* court explained:

> If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). But even if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec.,* 454 F.3d 1050, 1056 (9th Cir.2006).

*Id.* at 810. Where, as here, the lay witness testimony was expressly considered, and is contradicted by the medical opinion evidence of record, there is no reversible error. *See id.* at 811 (finding no reversible error in ALJ's refusal to allow lay witness testimony because, *inter alia*, "the testimony runs counter to the weight of the medical evidence and testimony", and "the vocational expert testified that Maloney is capable of gainful employment", therefore "[e]ven considering the [lay witness testimony] . . . the ALJ would not have reached a different disability determination."); *see also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("The testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians. In the instant case, the ALJ did not err in failing to accord substantial weight to [the lay witness] testimony because the testimony is also not supported by Simons's treating physician.") (internal citation omitted).

Past Work

Plaintiff next contends the ALJ failed to consider that Plaintiff's past work was performed with significant accommodation from his family. He points to the testimony from Mr. Urda that Plaintiff's job was a favor to the family and that such work could have been accomplished by a part-time employee. He cites Social Security Rulings 83-33, 1983 WL 31255 (Determining Whether Work is Substantial Gainful Activity—Employees), and 84-25, 1984 WL 49799 (Determination of Substantial Gainful Activity if Substantial Work Activity is Discontinued or Reduced—Unsuccessful Work Attempt).

Plaintiff's argument misses the mark. The ALJ in this case expressly found Plaintiff was *not* capable of performing this past work. (Tr. 16-17). In so finding, he relied on the VE's testimony that such work was skilled (Tr. 31), whereas his RFC ultimately limited Plaintiff to what the VE classified as unskilled work, *see* Tr. 15, 52.

Because the ALJ did not find Plaintiff capable of returning to his past work as an accounting clerk for the family business, arguments about how that work was performed are not well-taken.

Credibility / Subjective Symptom Reports[4]

Plaintiff's opening brief contains a heading stating: "The ALJ must explain the credibility determination, the weight given, and the reasons for that weight." (Doc. 10, at 11). Following this

---

4. Social Security Regulations previously used the term "credibility" for evaluating a Plaintiff's subjective report of symptoms. *See* SSR 96-7p, 1996 WL 374186. In March 2016, the Social Security Administration issued new Social Security Ruling 16-3p, which eliminated "'the use of the word 'credibility' . . . to 'clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (quoting SSR 16-3p, 2016 WL 1119029, at *1). Both SSR 96-7p and SSR 16-3p direct the ALJ to evaluate an individual's subjective report of symptoms with the factors listed in 20 C.F.R. § 404.1529. SSR 16-3p. 2016 WL 1119029, at *7; 1996 WL 374186, at *2. Thus, while the term "credibility" was eliminated, prior case law is still applicable. *See Pettigrew v. Berryhill*, 2018 WL

15

heading is a block quote pasted from *Harbin v. Comm'r of Soc. Sec.*, 2017 WL 2541321 (N.D. Ohio)[5], finding a credibility analysis unsupported. *See* Doc. 10, at 11-12. Plaintiff presents no argument on this point, other than to state in a footnote that the ALJ in this case used the same sentence in addressing credibility ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision"). (Doc. 10, at 12 n.4) (citing Tr. 16).

First, the undersigned notes that immediately following the quotation Plaintiff uses, the court in *Harbin* went on to explain:

> The ALJ's decision on the issue of plaintiff's credibility is a close call. Although the ALJ could have done a better job explaining her decision on plaintiff's credibility, *the undersigned would not recommend remand on that basis alone*. However, because the undersigned is recommending that the case be remanded for further proceedings on other grounds, it is also recommended that the ALJ provide a better explanation of the determination of plaintiff's credibility.

2017 WL 2541321, at *14 (emphasis added).

Second, it is ultimately for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

---

3104229, at *14 n.14 (N.D. Ohio) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96–7p has been invalidated by SSR 16–3p."), *report and recommendation adopted by* 2018 WL 3093696.

5. Report and recommendation adopted *sub nom* by *Harbin v. Berryhill*, 2017 WL 2501064 (N.D. Ohio).

gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Credibility determination will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such findings are "virtually unchallengeable", *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). The Court is thus limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.].").

Here, the ALJ thoroughly summarized Dr. Pickholtz's evaluation and opinion (Tr. 14) and Plaintiff's reported daily activities (Tr. 14-15). Dr. Pickholtz found Plaintiff had some mental limitations, but was only "slightly impaired at worst" in carrying out instructions or responding to supervision and coworkers; and "somewhat impaired at worst" in maintaining attention, concentration, persistence, and pace, and responding to work pressures. (Tr. 240). Notably, Dr. Pickholz also offered such restrictions in comparison to Plaintiff's past work, which was more demanding than the work the ALJ found Plaintiff capable of. *Id.* ("for work comparable to the type of work he did in the past"). These findings are in contrast to Plaintiff's allegations that his impairments were fully disabling. Further, as discussed above, the ALJ summarized the state agency psychological consultants' opinions and assigned them "significant weight". (Tr. 16). Again, these opinions concluded Plaintiff had some limitations, but that he retained the mental residual functional capacity for a range of work. *See* Tr. 64-65, 77-78. As such, the undersigned finds the ALJ's statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

17

evidence in the record for the reasons explained in this decision" (Tr. 16) is supported by substantial evidence.

In conclusion, it is ultimately Plaintiff's duty to produce evidence to establish disability. *See, e.g., Watters v. Comm'r of Soc. Sec. Admin.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability.") (citations omitted); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (explaining claimant's burden to prove disability); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Further, even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. The ALJ's decision here is supported by substantial evidence and should be affirmed.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.

      s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).